Christopher T. Holland [State Bar No. 164053] cholland@kksrr.com
Lori L. Behun [State Bar No. 202309] lbehun@kksrr.com
Anjali Kumar [State Bar No. 227075] akumar@kksrr.com
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, CA  94104
Telephone:  (415) 249-8330
Facsimile:   (415) 249-8333

Attorneys for Defendants
DIRECTREVENUE, LLC, CHRIS DOWHAN, JOSHUA ABRAM,
THE BEST OFFERS NETWORK, LLC
(formerly known as and named in the complaint as BETTERINTERNET, LLC)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATINA DIANE BATTAGLIA, an individual for herself and all those similarly situated, PETER MARTIN, an individual for himself and all those similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>DIRECTREVENUE, LLC, a Washington Limited Liability Corporation, CHRIS DOWHAN; JOSHUA ABRAM, BETTERINTERNET, LLC, DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.: 05-CV-02547-LKK-PAN (JFM)<br><br>**CLASS ACTION**<br><br>**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT** |

**FINAL APPROVAL ORDER**

Plaintiffs Matina Diane Battaglia ("Battaglia"), an individual for herself and all those similarly situated, and Peter Martin ("Martin"), an individual for himself and all those similarly situated, (hereafter collectively, "Plaintiffs" or the "Class Representatives"), and defendants DirectRevenue, LLC, and The Best Offers Network, LLC (f/k/a BetterInternet, LLC) (collectively,

1

PDF created with pdfFactory trial version www.pdffactory.com

"DirectRevenue"),and the individual defendants, Chris Dowhan and Joshua Abram (collectively, "Individual Defendants") (all defendants are collectively referred to herein as the "Settling Defendants") having made a joint request pursuant to Rule 23 of the Federal Rules of Civil Procedure for a final order approving the proposed settlement of this lawsuit in accordance with the Settlement Agreement and Limited Release (the "Agreement") filed with this Court, and the Court having read and considered the Agreement, and Plaintiffs and the Settling Defendants having consented to the entry of this Order:

In the Preliminary Approval Order dated August 23, 2006, this Court scheduled a Final Approval Hearing for December 11, 2006 at 10:00 a.m. to determine whether: (a) the proposed settlement on the terms and conditions set forth in the Settlement Agreement and Limited Release (the "Agreement") is fair, reasonable and adequate, and (b) final judgment (in the form of the Order attached to the Agreement as Exhibit D) should be entered. The Court also ordered that the Settlement Notice (Exhibit C to the Agreement) be published to the Class in the manner described in the Preliminary Approval Order.

The Final Approval Hearing on the Agreement was duly held before this Court at which time all interested persons were afforded an opportunity to be heard. This Court has duly considered all of the submissions and arguments presented on the proposed settlement.

**NOW, THEREFORE, THIS COURT FINDS, CONCLUDES, ADJUDGES AND DECREES THAT:**

1. The Court certifies for purposes of settlement the following defined class (the "Class") pursuant to Federal Rule 23(b)(2): "All persons or entities who owned computers in California and who had DirectRevenue's targeted advertising software (the

PDF created with pdfFactory trial version www.pdffactory.com

"Software")[1] downloaded onto their computers in California at any time on or after March 31, 2002."

2. The proposed settlement of the claims of Plaintiffs and the Class on the terms and conditions set forth in the Agreement is fair, reasonable, adequate, in the best interests of the Class, and is hereby approved;

3. The class representatives (Battaglia and Martin) and Class Counsel (Bronson & Associates) have fairly and adequately represented the interests of the Class in this matter and in its resolution;

4. This Order is binding on Plaintiff and all members of the Class. The Settling Defendants are bound by their obligations under the Agreement. The Agreement shall be consummated in accordance with the terms and provisions of the Agreement. The parties are directed to carry out their obligations under the Agreement;

5. Pursuant to Paragraph 3 of the Agreement, as of the Effective Date of the Agreement, the Settling Defendants are enjoined and restrained as follows:

   a. Direct Revenue will not intentionally collect any personally identifiable information (name, address, phone number, social security number, e-mail address, bank account information, etc.) about computer users.

   b. Direct Revenue will assure that, prior to the installation of the Software, computer users are (a) provided with Direct Revenue's End User License Agreement ("EULA"), and (b) given two choices, of equal prominence within the modal box or landing page, to the effect of:

   **"I have read and accept the agreement"** or

   **"I do not accept the terms of the agreement"**

   The "accept" option will not be a default option. If the user selects the "I do not accept" choice, the Software will not be installed.

   c. In addition to providing computer operators with its EULA, Direct Revenue will also disclose, separate and apart from the EULA, that: (1) users will receive advertisements while online, along with a brief description of the types of ads that will be displayed; (2) Direct Revenue will collect information about

---

[1] As defined in the Settlement Agreement, Software includes the files: Bi.dll, MultiMPP, Btgrab.dll, mxTarget.dll; , Dlmax.dll, iehelper.dll, pynix.dll, Host.dll, TPS108.dll, IPInsigt.dll, Twaintec.dll, LocalNRD.dll, VoiceIP.dll, VX2.dll, ZServ.dll, Ceres.dll, Speer.dll, Speer2.dll, Speeryox.dll, AHexe.dll, kz515.dll, Aurora.exe (polymorphic), buddy.exe, Tbon.exe, Tbonsn.exe, Tbonuac.exe (polymorphic), Tboncst.ee, Gsim.dll, systb.dll, Dinst.dll, dinst.exe, TBONcomp.dll, TBONAS.exe.

PDF created with pdfFactory trial version www.pdffactory.com

web sites visited by users; and (3) the Software will be included in their installation of the ad-supported software. This disclosure will be independently displayed within the modal box containing the "I have read and accept" and "I do no accept" choices described above. The additional disclosures shall appear above the choices described in subparagraph b, above, but will end no more than one inch away from those choices.

    d.    Direct Revenue, will not install Software via ActiveX installations, or by any other method that does not require users' affirmative consent.

    e.    Direct Revenue will not install Software via computer security exploits.

    f.    In Direct Revenue's EULA, Direct Revenue will disclose the fact that the Software serves pop-up ads based on web sites visited by the user, and that Direct Revenue collects non-personally identifiable information, in order to serve those ads. The EULA will explain Direct Revenue's use of the non-personally identifiable information. The EULA will also notify users as to how the Software can be uninstalled, and will provide information on how to access Direct Revenue's website and customer support.

    g.    In distribution contracts executed following the parties execution of this settlement agreement, DirectRevenue will require distributors to abide by the policies represented in this settlement. DirectRevenue will closely police its distributors. If DirectRevenue learns that a distributor is violating the terms of its distribution contract, Direct Revenue will take appropriate action based on the circumstances of the violation, potentially including termination of the distributor.

    h.    Distributors will not be permitted to use sub-distributors unless those entities are bound by contract to adhere to the policies represented herein.

    i.    DirectRevenue will not distribute the Software via web sites that in DirectRevenue's good faith belief are targeted primarily at children. The EULA will include a disclosure that the Software should only be installed by users 18 years of age and older, and instructions (or a reference link to such instructions) on how to manage the user's operating system to minimize the possibility that children will be served with ads by the Software. Direct Revenue will disclose to Net Nanny (and similar services) the IP address of any server sending adult content ads through the Software.

    j.    DirectRevenue will not use the word "free" in banner ads describing the underlying program (i.e., the screen saver or video game) unless the ad also discloses that the program is ad-supported.

    k.    When the Software displays a pop-up ad, the "X" button on the title bar of the ad window (used to close the ad window) will not appear off-screen, unless this effect is caused by a technical issue without DirectRevenue's knowledge or beyond DirectRevenue's, control.

4

PDF created with pdfFactory trial version www.pdffactory.com

l.  All DirectRevenue ads will include a "?" button on the title bar, or a text link indicating that further information is available, which displays information about the Software when clicked. This information will include (1) an explanation of why the user is receiving the ad; (2) the identity of the consumer application the user downloaded with the Software (when and to the extent this is technically feasible); and (3) an instruction that, if the user so desires, the user can uninstall the Software using the Windows "Add/Remove Programs" function.

m.  The Software will not display adult content ads unless the user is viewing adult websites. DirectRevenue will disclose to Net Nanny (and similar services) the IP address of any server sending adult content ads through the Software.

n.  The Software will be listed in the Windows "Add/Remove Programs" list under the exact same name used in branding the ads.

o.  DirectRevenue will not modify security settings on users' computers.

p.  DirectRevenue will not reinstall its Software once a user has uninstalled it through the Windows "Add/Remove Programs" function or other removal method, unless the user later opts to download and install another bundled application and the installation proceeds in accordance with the terms herein.

q.  DirectRevenue will not delete other software on the user's computer other than any underlying program (e.g. screensaver) that was bundled with the Software upon the user's removal of the Software.

r.  DirectRevenue will not materially modify the Software's functionality without providing the user with notice and an opportunity to uninstall the Software.

s.  DirectRevenue will agree to limit its advertisements to a network average of 10 or less per computer per 24-hour period.

t.  DirectRevenue agrees that its removal instructions shall continue to be posted in a form in substantial conformity with that currently found at: http://www.bestoffersnetworks.com/uninstall/.

u.  DirectRevenue will limit its number of name changes used on its advertisements (*i.e.*, "Best Offers") to once per two years.

v.  DirectRevenue will agree to purchase sponsored links, if Google is willing to sell such sponsored links that provide links to help consumers remove DirectRevenue's software. At a minimum, DirectRevenue will agree to purchase links, if Google is willing to sell such sponsored links, for "BestOffers" and "BestOffers removal". By clicking on the sponsored link, the user will be taken to an Internet page with instructions on how to remove the

5

PDF created with pdfFactory trial version www.pdffactory.com

Software. Should DirectRevenue change the name of its software, it will purchase sponsored links with the new name of the Software referenced.

    w.    DirectRevenue will not "flush" or otherwise remove domain names from browser's list of "trusted sites".

6. The Summary Settlement Notice and Settlement Notice published as specified in the Agreement following entry of the Preliminary Approval Order constituted the best notice practical under the circumstances and are in full compliance with the notice requirements of due process and Fed R. Civ. P. 23;

7. Upon the Effective Date of the Agreement, Plaintiffs and the Class are permanently enjoined from continuing to prosecute claims within the scope of the limited release set forth in Paragraph 4 of the Agreement;

8. All of the claims for injunctive relief asserted in this lawsuit by Plaintiff are dismissed with prejudice;

9. The Court approves the award of attorneys' fees and costs to Class Counsel as specified in Paragraph 9 of the Agreement; and

10. This Court retains jurisdiction over all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of the Agreement and this Order. The Court specifically retains jurisdiction over any claims by a Class member asserting breach of the terms of this settlement.

11. Therefore, the Court hereby orders the Complaint dismissed <u>with prejudice</u> in its entirety.

**IT IS SO ORDERED.**

DATED: December 12, 2006

*/s/ Lawrence K. Karlton*
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

73390

PDF created with pdfFactory trial version www.pdffactory.com